UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



FILED
MAR 0 3 2010
CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 09-30106-RAL |
| Plaintiff, | |
| -vs- | REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS |
| JOSEPH "JIMMY" REYNOLDS, III, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant, Joseph "Jimmy" Reynolds, III ("Reynolds"), has filed a Motion to Suppress, Docket No. 25. In his Motion, Reynolds seeks to suppress, under the Fifth Amendment, the statements he made to Calvin Waln, a special agent with the Rosebud Sioux Tribe Law Enforcement Services, on July 21, 2009. Specifically, Reynolds claims that his statements were obtained in violation of his right to remain silent and were involuntary.

Plaintiff, United States of America ("Government"), filed a Response to the suppression Motion, opposing the same. Docket No. 29. The Government asserts that Reynolds's statements were taken in accord with the Fifth Amendment and were voluntary.

On March 1, 2010, an evidentiary hearing was held to address Reynolds's Motion. At the hearing, two witnesses testified and seven exhibits were received into evidence.

Because the suppression Motion is a dispositive one, this Court is only authorized to determine the same on a report and recommendation basis. 28 U.S.C. §636(b)(1). Having reviewed and considered the evidence of record and the transcript prepared of the hearing,

the Court now makes and proposes the following report and recommendation for disposition of the Motion.

I.

On July 20, 2009, at about 3:30 a.m., Reynolds was arrested tribally for allegedly raping D.B., an adult female. Approximately 29 hours after his arrest, and while still in custody, Waln interviewed Reynolds at the Rosebud Police Department. Reynolds was advised of his Miranda rights, via an advice of rights form, indicated he understood his rights and waived them by executing the form presented to him. The interview lasted approximately 40 minutes and was conversational. Reynolds did not ever ask to speak with an attorney at any time during the interview. While admitting that he had sexual intercourse with D.B. in the past, Reynolds denied that he did so on or about July 19, 2009 (the date charged in the Indictment).

At some point later in the interview, Waln asked Reynolds how D.B.'s pants came off. In response, Reynolds said, "I plead the Fifth on that." Waln then asked Reynolds to explain why D.B. was wearing Reynolds's underwear. Reynolds replied that he did not know, that it was "scary" she [D.B.] had his underwear on and posited that "if someone was raped and running for their life, that's why someone would have somebody's underwear on."

The interview continued for another five to ten minutes after this exchange. During this time period, Reynolds talked about D.B. being "weird", about people in the housing area not liking him, and about his prior arrests, including one for vandalism.

Reynolds now contends that he invoked his Fifth Amendment right to remain silent when he "pled the Fifth" and that after doing so, the interview should have immediately

2

ended – but did not. He also maintains that his statements to Waln were involuntary under the Fifth Amendment and should be suppressed.

## II.

The safeguards of Miranda "'assure that [a suspect's] right to choose between speech and silence remains unfettered throughout the interrogation process.'" Connecticut v. Barrett, 479 U.S. 523, 528 (1987) (quoting Miranda v. Arizona, 384 U.S. 436, 469 (1966)). The suspect has the right to "control the time at which questioning occurs, the subjects discussed and the duration of the interrogation." Michigan v. Mosley, 423 U.S. 96, 103-04 (1975).

After a suspect has been advised of his right to remain silent and to counsel under Miranda, police may not proceed with questioning if the suspect indicates a desire to remain silent. Miranda, 384 U.S. at 473-74. The suspect's right to cut off questioning is grounded in the Fifth Amendment and must be "scrupulously honored." Mosley, 423 U.S. at 103. Police, however, are only required to cease questioning if the invocation of Miranda rights is clear and unequivocal. See Davis v. United States, 512 U.S. 452, 459-60 (1994). In the context of the Fifth Amendment right to counsel, the Supreme Court has held that in order to effectively invoke this right, a suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for attorney . . . . If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." Davis, 512 U.S. at 459-62. This "clear articulation" rule is also applicable to a suspect's assertion of his Fifth Amendment right to remain silent. Simmons v. Bowersox, 235 F.3d 1124, 1131 (8th Cir.), cert. denied, 534 U.S. 924 (2001); United States

3

v. Johnson, 56 F.3d 947, 955 (8th Cir. 1995); see also Burket v. Angelone, 208 F.3d 172, 200 (4th Cir.), cert. denied, 530 U.S. 1283 (2000); Bui v. DiPaolo, 170 F.3d 232, 239 (1st Cir. 1999), cert. denied, 529 U.S. 1086 (2000); United States v. Mikell, 102 F.3d 470, 476 (11th Cir. 1996), cert. denied, 520 U.S. 1181 (1997).

Several courts have held that a suspect may selectively waive his Miranda rights and decide to respond to some questions but not others. See e.g. Mikell, 102 F.3d at 477; United States v. Eaton, 890 F.2d 511, 513 (1st Cir. 1989), cert. denied, 495 U.S. 906 (1990); Bruni v. Lewis, 847 F.2d 561, 563-64 (9th Cir.), cert. denied, 488 U.S. 960 (1988); State v. Wright, 196 Wis.2d 149, 156-57, 537 N.W.2d 134, 137 (Wis. App. 1995), review denied, 542 N.W.2d 155 (Wis. 1995). Additionally, one United States Supreme Court case provides helpful guidance on the issue of selective invocation. In Fare v. Michael C., 442 U.S. 707 (1979), a suspect declined to answer certain questions, claiming that he either did not know the answer or that he would not or could not answer specific questions. 442 U.S. at 726-27. The Supreme Court held that the suspect's actions "were not assertions of his right to remain silent." Id. at 729. In doing so, the Court concluded, at least by implication, that refusals to answer specific questions do not assert an overall right to remain silent, requiring that all questioning cease.

In accord with this precedent, the Court holds that Reynolds's statement ("I plead the Fifth on that") was an unequivocal, but limited, invocation of his right to remain silent. He was asked a specific question and answered that he would remain silent (plead the Fifth Amendment) on that question. Any reasonable person in Waln's shoes would have construed

Reynolds's statement to mean that he was not going to answer that particular question, but not necessarily further questions that Reynolds may be asked.[1]

Significantly, at no time did Reynolds ever refuse to answer any additional or follow-up questions and at no time did he state that he wanted questioning as a whole to cease. Instead, his clear desire was to selectively invoke his Fifth Amendment right to remain silent as to one, but only one, question. He did not invoke his general right to remain silent and any claim to the contrary is without merit. See United States v. Thomas, 176 Fed. Appx. 997 (11th Cir.) (suspect's refusal to answer a specific question is not tantamount to an invocation of rights as to other questions), cert. denied, 549 U.S. 869 (2006); Wright, 196 Wis.2d at 156-58, 537 N.W.2d at 137-38 (suspect's answer that he would "plead the Fifth on that one" in response to a specific question did not invoke his general right to remain silent); People v. Silva, 45 Cal.3d 604, 629-30, 754 P.2d 1070, 1083-84 (1988) (suspect's statement "I really don't want to talk about that" was not an invocation of his right to remain silent as to any further questioning), cert. denied, 488 U.S. 1019 (1989); see also State v. Rogers, 277 Neb. 37, 66, 760 N.W.2d 35, 59-60, nn. 88, 89 (2009) (citing cases for the proposition that statements which indicate only a suspect's desire to avoid answering a particular question or to avoid speaking about particular themes do not trigger Miranda protections because an invocation of the right to remain silent is a communication that the suspect wishes questioning as a whole to cease).

---

[1] An interpretation that Waln, himself, had made following Reynolds's statement.

5

III.

Reynolds also claims that his statements to Waln on July 21st were involuntary and therefore inadmissible at trial under the Fifth Amendment.

Due process requires that incriminating statements or "confessions" be voluntary. See Brown v. Mississippi, 297 U.S. 278, 285-86 (1936); see also Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973) (a voluntary confession may be used against a suspect, but an involuntary one offends due process). The appropriate test for determining voluntariness is whether pressures exerted on the suspect have overborne his will. United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990) (quoting United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989)), cert. denied, 502 U.S. 829 (1991). A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker." Schneckloth, 412 U.S. at 225. On the other hand, "[a] statement is involuntary when it [is] extracted by threats, violence or express or implied promises sufficient to overbear the [suspect's] will and critically impair his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004), cert. denied, 543 U.S. 1145 (2005).

The totality of the circumstances must be considered when determining whether a statement was made voluntarily. Id.; see also Wilson v. Lawrence County, 260 F.3d 946, 952 (8th Cir. 2001). When doing so, two factors must be focused on: the conduct of the officer and the characteristics of the suspect. LeBrun, 363 F.3d at 724. A statement cannot be rendered involuntary by the incapacity of the suspect alone; there must be some coercive police activity. Colorado v. Connelly, 479 U.S. 157, 164, 167 (1986). The Government bears the burden of persuasion and must prove, by a preponderance of the evidence, that the

challenged statements were voluntary. Id.; see also United States v. Astello, 241 F.3d 965, 966 (8th Cir.), cert. denied, 533 U.S. 962 (2001).

After applying the totality of the circumstances test, the Court finds and concludes that the requisite coercive or overreaching conduct sufficient to render Reynolds's statements involuntary is lacking. Several facts support this finding and conclusion.

First, the duration of the questioning and detention of Reynolds were relatively short. Nothing about this approximately 40-minute interview suggests unconstitutionally coercive conduct.

No threats or promises were made to Reynolds and no undue influence or pressure was exerted on him. The tone and overall atmosphere of the interview were neither hostile nor coercive. And, Waln at no time ever brandished his weapon or intimidated Reynolds in any way.

Nor does anything about Reynolds indicate an inability on his part to resist pressure. He was 30 years old at the time, had obtained his GED and could read and write the English language. He had been convicted of several offenses in South Dakota and Tennessee from 1999 to 2005 (including burglary of a building) and had been arrested by tribal police on numerous occasions, between 2004 and 2009, for a whole host of offenses. As such, he was not an immature and naive stranger to the criminal justice system.

Notably, Reynolds's responses to questions posed to him were logical and understandable. The record is devoid of any probative evidence that Reynolds was under the

7

influence of alcohol or drugs[2] or was suffering from any mental or physical impairments at the time of the interview.

Lastly, and perhaps most importantly, Reynolds continually proclaimed his innocence. He not only denied raping D.B. on the day in question, but also denied, more than once, having intercourse with her that day. When asked how D.B.'s pants came off, Reynolds had enough wherewithal to assert his right to remain silent and then offer a somewhat illusory response after inquiry was made as to why she was wearing his underwear.

The statements made by Reynolds were voluntary and not the product of coercive interrogation or overreaching on the part of Waln. Reynolds was read his Miranda rights, waived them and made unconstrained statements to Waln. Because Waln took no action that could objectively be considered as coercion or overstepping his bounds, there is nothing to refute the voluntariness of Reynolds's statements. The Government has thus established, by a preponderance of the evidence, that Reynolds's statements satisfied the voluntariness requirements of the Fifth Amendment. Accordingly, the statements are admissible at trial as substantive evidence.

IV.

Based on the foregoing, the Court finds and concludes that Reynolds's one-time statement, "I plead the Fifth on that", in response to a question, did not require the cessation

---

[2]Even if Reynolds drank alcohol and/or smoked marijuana before his tribal arrest, he nonetheless did not exhibit any of the manifestations of one who was under the influence of either or both of the same while being interviewed.

of all further questioning and that his statements, given to Waln, were not involuntary so as to be excludable at trial. This being the case, the Court hereby

RECOMMENDS that Reynolds's Motion to Suppress, found at Docket No. 25, be denied in all respects.

Dated this 9th day of March, 2010, at Pierre, South Dakota.

BY THE COURT:

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
                        Deputy
(SEAL)

NOTICE

Failure to file written objections to the within and foregoing Report and Recommendation for Disposition within fourteen (14) days from the date of service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. See 28 U.S.C. § 636(b)(1).